**Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, as Receiver for National Heritage Life Insurance Company, in Liquidation, Plaintiff–Appellant,**

v.

**UFH APARTMENTS, INC., a New York Corporation; Seymour Braun, individually; Isaac Stern, individually; and Regina Guttman, individually, Defendants–Appellees.**

**Docket No. 01–7903.**

United States Court of Appeals, Second Circuit.

Oct. 8, 2002.

Robert E. Rice, McDermott, Will & Emery, New York, NY, for Appellant.

David W. Wiltenburg, Hughes Hubbard & Reed, New York, NY, for Appellees.

Present WINTER, SACK and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Donna Lee H. Williams, Insurance Commissioner of the State of Delaware, as receiver for National Heritage Life Insurance Company ("NHL"), appeals from a final judgment entered by Judge Brieant following a bench trial. The district court dismissed the fraudulent conveyance and related claims under which she sought recovery of approximately 320 co-op apartment units located in the Tudor City complex in Manhattan (the "Co-ops") from UFH Apartments, Inc. ("UFH"). Appel-

lant seeks recovery on behalf of NHL on the grounds that: (i) NHL was in 1994, and remains today, a creditor of NES Consulting Corporation ("NES"), and (ii) NES in 1994 fraudulently conveyed the Co-ops to UFH. The district court found a failure of proof as to the existence of an unsatisfied debt owed from NES to NHL and, therefore, denied appellant's fraudulent conveyance claim. The district court also denied appellant's claims for unjust enrichment and money had and received, and appellant's claim seeking imposition of a constructive trust. We affirm.

Between 1992 and 1994, South Star Management ("South Star") purchased pools of mortgages from various parties using NHL funds passed through attorney trust accounts. The mortgages were then placed in National Housing Exchange, Inc. ("NHE"), which securitized them by issuing a bond (the "NHE Bond") to NHL. In 1993 Yasuda Trust ("Yasuda"), a subsidiary of a Japanese banking corporation, sold a package of Tudor City assets to South Star and NES. The Tudor City portfolio consisted of 212 mortgages (the "Tudor City Mortgages"), 136 of which were performing, and the Co-ops, which at the time had a negative cash flow of $17,500 per month.

Yasuda sought to dispose of the Tudor City Mortgages and the Co-ops in a single transaction and solicited bids for the combined assets. The bid form provided by Yasuda in the solicitation process requested that the bid price be apportioned between the Tudor City Mortgages and the Co-ops, and South Star submitted the winning bid, offering $8,526,000, of which $100,000 was allocated to the Co-ops and $8,426,000 to the Tudor City Mortgages. Yasuda and South Star entered into a purchase and sale agreement dated December 16, 1993 reflecting these terms. On December 30, 1993, the scheduled closing

date, this purchase and sale agreement was canceled and replaced by two separate agreements, whereby South Star purchased the Tudor City Mortgages for $8,426,000, and NES, a shelf company found by the district court to be controlled by the same individuals who controlled South Star, purchased the Co-ops for $100,000. At the December 30, 1993 closing, NHL funds totaling $852,600, previously placed in escrow on behalf of South Star, were paid out of escrow to Yasuda, and the closing documents were placed in escrow pending payment of the balance of the purchase price. The balance of funds owed under the purchase and sale agreements, $7,573,400 owed by South Star for the Tudor City Mortgages, and $103,346.86 owed by NES for the Co-ops, was paid to Yasuda on January 3, 1994 from an attorney trust account using NHL funds.

The district court found that the $103,346.86 purchase price paid by NES for the Co-ops did not reflect the proportional value of the Co-ops within the Yasuda transaction, and it therefore deemed the Co-op transaction and the Tudor City Mortgages transaction to be a single transaction for the purpose of determining the debt owed by NES to NHL. The district court thus found that, following the Yasuda transaction, and at the time of the transfer of the Co-ops from NES to UFH, South Star and NES were jointly and severally indebted to NHL in the amount of $8,716,854.86. This figure included the combined purchase price for the Yasuda transaction, plus certain transaction costs and NES administrative costs paid by NHL.

The Tudor City Mortgages, but not the Co-ops, were part of the collateral for the NHE Bond. Appellant, as receiver for NHL, now has possession of the Tudor City Mortgages. Appellant has provided summary accountings of: (i) recoveries and expenses related to the NHE collateral generally, and (ii) recoveries and expenses related to the Tudor City Mortgages in particular. These accountings consisted of unaudited and thinly supported data prepared by appellant and NHL for this litigation. At trial, appellant expressly declined to provide testimony by the employee responsible for preparing the Tudor City accounting.

In the Tudor City accounting, appellant admits to approximately $14,600,000 in gross identifiable recoveries and residual asset value related to the Tudor City Mortgages. In the same accounting, appellant claims approximately $27,000,000 in losses related to the Tudor City Mortgages, including the original NHL expense on the Yasuda transactions, forfeited interest on the NHE bond, and various operating, transaction and litigation expenses associated with the Tudor City Mortgages and the NHE Bond.

The district court found, and we agree, that the Tudor City accounting fails to show an outstanding debt owing from NES to NHL for several reasons. First, the documents are of doubtful admissibility, but, even if admissible, they are hardly of such reliability as to require credence by the district court. Second, appellant listed in the accounting a number of expenses, including servicing and expense charges, collateral recovery litigation expenses related to the entire NHE Bond, and legal expenses incurred in connection with this case, which are not clearly associated with the Tudor City assets and cannot be accepted without further substantiation. Third, appellant's prejudgment interest figure cannot be verified because dates of collections made are not provided. Fourth, appellees claimed, without refutation by appellant, that appellant's Tudor City accounting failed to give appropriate credit for all interest receipts on the mort-

gages, and appeared to apply an excessive discount to the value of the Tudor City Mortgages still owned by appellant.

On June 5, 2001, the district court, in its findings of fact and conclusions of law, noted the above deficiencies. Rather than immediately finding a failure of proof as to the amount of uncollected debt owed to NHL by NES, the court offered to reopen the trial record or appoint a special master for the purpose of resolving the issue. By letter dated June 19, 2001, appellees requested such a reopening and appointment of a special master. By letter dated July 3, 2001, appellant declined to provide further evidence, requesting that the district court "review the existing evidence and render a final judgment in order that the parties may pursue whatever issues they desire on appeal." Accordingly, on July 10, 2001, the district court issued a Memorandum and Order finding that appellant had failed to meet her burden of proving the amount owed by NES.

Any recovery by appellant under a fraudulent conveyance theory would be limited to the amount of NES's unsatisfied debt owed to NHL. *See* N.Y. Debt. & Cred. Law § 278 (providing that "a creditor" may have a fraudulent conveyance set aside "to the extent necessary to satisfy his claim"); *see also State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 299 N.Y. 363, 366–67, 87 N.E.2d 299 (1949) (holding that a creditor's right to set aside a fraudulent conveyance is barred in the absence of "a valid enforcible claim," and that "[a] creditor's bill attacking his debtor's transfer is adjective and ancillary only, to the creditor's right to collect his original debt."); *accord Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir.1989) (noting that where plaintiff is no longer defendant's creditor, plaintiff is not entitled to remedy of setting aside defendant's transfers as fraudulent).

For the reasons stated by the district court, *see* Dist. Ct. Findings of Fact and Conclusions of Law at 23–27, the evidence does not support a finding that NES was ever indebted to NHL in excess of the $8,716,854.86 in joint and several liability of South Star and NES related to the Yasuda transaction.

Appellant notes that there have been no recoveries from NES or the Co-ops, and argues that recoveries on the Tudor City Mortgages should not be applied to this debt. It may be true that NES's debt would not be extinguished by undifferentiated payments from South Star to NHL not specifically traceable and attributable to the Yasuda transaction. However, because NES is jointly and severally liable for the NHL funds used by South Star to purchase the Tudor City Mortgages (in addition to the funds used by NES to purchase the Co-ops), NES's liability is reduced to the extent of any NHL recoveries on *either* the Tudor City Mortgages or the Co-ops. *See* N.Y. Gen. Oblig. Law § 15–103 ("The amount or value of any consideration received by the obligee from one or more . . . joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all co-obligors . . . .").

Appellant has possession of the Tudor City Mortgages themselves, has recovered substantial amounts on them, and has declined, despite repeated requests by appellees and by the district court, to offer evidence sufficient to establish that these recoveries have not satisfied NES's and South Star's joint and several debt to NHL. The district court's finding of a failure of proof as to the existence of any remaining unsatisfied debt owed by NES to NHL is therefore not clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Sumner v. U.S.*

*Postal Serv.,* 899 F.2d 203, 208 (2d Cir. 1990).

We also agree with the district court's conclusions as to appellant's claims against the individual defendants and as to appellant's claims in counts two and three of the amended complaint. *See* Dist. Ct. Findings of Fact and Conclusions of Law, at 50–51.

We have considered appellant's remaining arguments and find them to be without merit. We therefore affirm.